Felix SANTIAGO, Plaintiff,

v.

TEMPLE UNIVERSITY, Defendant.

Civ. A. No. 89–9144.

United States District Court,
E.D. Pennsylvania.

June 4, 1990.

Andrew F. Erba, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Beth C. Koob, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

This action includes claims for alleged violations of the Federal Rehabilitation Act (Count I), due process (Count II), retaliatory conduct in violation of the First Amendment (Count III), retaliatory discharge under Pennsylvania law (Count IV), and intentional infliction of emotional distress (Count V).

Plaintiff's claims in Counts I and II are premised on the assumptions that he was "handicapped" as defined under the Federal Rehabilitation Act (the "Act"), that he was "otherwise qualified" under the Act, that he could be reasonably accommodated for his handicap, and that the plaintiff's proposed accommodation would not present an undue burden on Temple University (the "University"). In essence, plaintiff is claiming that the University had an obligation under the Act to tolerate and accommodate his frequent and unpredictable absences from work on the basis of his eye-related injury.

Count III is premised upon the novel argument that the filing of a workmen's compensation claim is the legal equivalent of exercising free speech protected under the First Amendment to the United States Constitution.

Count IV, retaliatory discharge, is based upon the alleged relationship between plaintiff's filing of his workmen's compensation claim in 1985 and his ultimate discharge three years later.

Plaintiff's final claim in Count V is that termination from employment gives rise to liability for intentional infliction of emotional distress.

After reviewing the defendant's motion for summary judgment, and the response thereto, the Court finds that there exist no genuine issues of material fact. The Court further finds that the defendant is entitled to summary judgment as a matter of law on the basis of the following facts.

### I. *Factual Background.*

Plaintiff was hired as an x-ray attendant on February 4, 1971. During the 1971–1972 year, plaintiff was warned about his record of lateness. In 1973, District Local Union 1199C became the representative of service workers, including plaintiff, by adoption of its contract with Temple. Under the contract in effect at the time of plaintiff's termination, the University was given exclusive management rights to develop and implement employee work rules. The relevant sections of the work rules provide for progressive discipline beginning with the eleventh absence incurred in any twelve month period, and culminates in termination at the sixteenth absence within the same twelve month period. While absences can be excused (prior permission or proof of illness) or unexcused (personal business or failure to call out), all absences are counted in determining whether excessive absences have occurred.

In 1974, plaintiff requested, and was granted, a transfer, assuming the position of operating room attendant in May of 1974. Plaintiff's work performance evaluation for March 1975 indicates that plaintiff continued exhibiting problems with lateness. In November 1976, plaintiff suffered a work related back injury requiring three weeks of worker's compensation. During the 1977–78 attendance period, plaintiff was absent fifteen days, and had returned to work with physician's notes on four occasions. According to plaintiff's deposition testimony, these notes were presented in accordance with what he understood was Temple University Hospital's policy.

For the period 1978–79, plaintiff was absent from work for twelve days, providing a physician's note upon return to work on only one occasion.

The attendance year 1982–83 indicates that plaintiff received disciplinary action following twelve absences, which occurred in a six month period.

The following year (1983–84), plaintiff received, and acknowledged by signature, a disciplinary warning for excessive absenteeism.

From September through November 1984, plaintiff requested and received a medical leave of absence for surgical repair of an inguinal hernia. On May 19, 1985, he suffered an eye injury during the course of employment, returning to work in the emergency room with medical clearance to perform full duties on October 27, 1986. Upon return to work, and for the remaining period of the 1986–87 year, plaintiff continued his pattern of attendance policy abuse by incurring another nineteen days absent from work, for which disciplinary action was instituted pursuant to the applicable work rules.

More than a year and a half later, and three years after he had filed his workmen's compensation claim, plaintiff was discharged from his position as an emergency room patient care attendant on May 26, 1988, for habitual absenteeism in accordance with the Temple University work rules. According to plaintiff's deposition testimony, at no time did he discuss with his supervisor upon returning to work the reasons for his absence (Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, hereafter "Defendant's Memorandum", at p. 5).

During the 1987–88 year, plaintiff's final year of employment, he was absent twenty-nine (29) times. Plaintiff testified that five absences were for unrelated personal reasons. According to plaintiff's testimony, he could not recall whether sixteen (16) of these absences were for reasons related to his eye or whether they were incurred for other reasons. (Defendant's Memorandum at p. 5). Plaintiff testified that at least up until the twenty-third absence, he could not recall whether he had visited a physician for reasons related to any eye inflammation, nor could he produce any documentation that any such visit had occurred. (Defendant's Memorandum at p. 5).

In accordance with plaintiff's collective bargaining agreement, plaintiff "grieved" his final suspension and ultimate termination, receiving grievance hearings with representation from the union for both disciplinary actions.

Following the affirmation of termination, the union declined to arbitrate the matter, and plaintiff's termination was therefore deemed to be final thirty (30) days following the termination grievance hearing decision.

## II.  *Summary Judgment Standard.*

A trial court may enter summary judgment if, after review of all evidentiary material in the record, there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law. *Long v. New York Life Insurance Co.*, 721 F.2d 118, 119 (3d Cir. 1983); *Bank of America National Trust and Savings Association v. Hotel Rittenhouse Associates*, 595 F.Supp. 800, 802 (E.D.Pa.1984). Where no reasonable resolution of the conflicting evidence and inferences therefrom, when viewed in a light most favorable to the nonmoving party, could result in a judgment for the nonmoving party, the moving party is entitled to summary judgment. *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 883 (3d Cir.), *cert. denied* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); *Vines v. Howard*, 676 F.Supp. 608, 610 (E.D.Pa.1987).

The moving party must initially show an absence of a genuine issue concerning any material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Childers v. Joseph*, 842 F.2d 689, 694 (3d Cir.1988). The moving party discharges this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554; *Vines*, 676 F.Supp. at 610. Once the moving party satisfies this burden, the burden then shifts to the nonmoving party, who must go beyond his pleadings and designate specific facts by the use of affidavits, depositions, admissions and answers to interrogatories showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, Fed.R. Civ.P. 56 mandates that when the nonmov-

ing party bears the burden of proof it must "make a showing sufficient to establish [every] element essential to that party's case." *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987) (quoting *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552).

III. *Discussion.*

A. Count I Must Be Dismissed Because the Rehabilitation Act Does Not Apply To, Or Provide Relief As Sought, By Plaintiff.

1. *Plaintiff is not a handicapped person as defined by 29 U.S.C. § 706 and therefore is not entitled to its protection.*

■ The Court finds that, as a matter of law, the partial vision loss pled in plaintiff's complaint does not entitle him to protection as a "handicapped" person under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* (the "Act"). The Act was enacted by Congress in order to permit persons with handicaps, who could otherwise meet valid job criteria, to have access to the workplace available to non-handicapped employees, and to prohibit employment discrimination against such persons on the basis of that handicap. By providing reasonable accommodations to assist the handicapped employee to meet job criteria, the handicapped individual is thereby able to join the workforce and engage in productive employment alongside fellow workers.

The Act defines a handicapped person in relevant part as "any person who has a physical ... impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 706(8)(B). A handicap, therefore, is clearly demonstrable in the absence of certain senses, *i.e.* the loss of hearing or sight. With augmentation or other visual cues, the deaf employee who is otherwise qualified to perform the tasks of the job can do so in a manner similar to other non-handicapped employees filling like positions. Through the conversion of visual materials into auditory ones, the otherwise qualified blind employee similarly can meet job criteria if he has the ability to hear.

In order for plaintiff to be found handicapped under the Act, plaintiff must show that the loss of partial vision in one eye, while retaining full vision in the other, substantially limits one or more of his major life activities. In understanding the proper application of the Act as intended by Congress, a "major life activity" is defined by federal regulation as the functions of "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 34 C.F.R. § 104.3(j)(2)(ii).

In this case, as a result of a foreign object hitting his left eye in May 1985, plaintiff has suffered a corneal abrasion, requiring corneal transplantation. Following successful surgery, plaintiff claims to have developed cataracts, causing partial vision loss to the injured left eye. There is no evidence, nor does plaintiff suggest, that there is any loss of vision or other visual difficulty with the right eye.

I find that plaintiff's condition is not of the type which so interferes with his ability to perform in the workplace that it requires accommodation in order to open an otherwise inaccessible door to employment. Moreover, as defendants have correctly argued, there is no case law holding that partial vision loss in one eye is a handicap as defined by the Act.

2. *Plaintiff has failed to establish the prima facie elements of a claim under the Act.*

■ In the seminal case of *Prewitt v. United States Postal Service*, 662 F.2d 292 (5th Cir.1981), the court addressed the application of the Act in making out a discrimination claim and held:

[T]he disabled claimant may establish a prima facie case of unlawful discrimination by proving that: (a) except for his physical handicap, he is qualified to fill the position; (b) he has a handicap that prevents him from meeting the physical criteria of employment; and (c) the challenged physical standards have a dispro-

portionate impact on persons having the same handicap from which he suffers. *Id.* at 310.

Plaintiff here is unable to meet the second and third required elements as laid out in *Prewitt* and applied by this court in *Bey v. Bolger*, 540 F.Supp. 910 (E.D.Pa.1982). Plaintiff claims only that his partial vision loss in one eye is his handicap. But the effect of the claimed handicap is not an inability to see, or to see adequately, nor is it even visually related. Rather, plaintiff attempts to characterize his inability to present himself at work in any predictable, constant, and scheduled manner as a result of intermittent eye inflammation as a "handicap" protected under the Act.

Plaintiff has not claimed, nor could he, that when he is at work there is *any* duty that he is unable to perform in the absence of some accommodation. Therefore, he meets all physical criteria to fill the job description and cannot demonstrate that he has a handicap which prevents him from meeting some physical job criteria. Consequently, there can be no physical standard required by any particular job duty which can be challenged by plaintiff here and plaintiff's claim necessarily fails under the facts alleged to make out a *prima facie* case of handicap discrimination under the Act.

Under the theory proposed by plaintiff to define his condition as a "handicap," the Court would have to find all chronic illnesses, whether transitory or permanent, that prevent an employee from meeting a regular work schedule, as a handicap under the Act. This is clearly inconsistent with Congressional intent under the Act.

3. *Even if the Act applies to plaintiff as a handicapped person, he is not "otherwise qualified" to hold the position of Patient Care Attendant.*

■ The handicap discrimination laws only protect "qualified handicapped persons." 29 U.S.C. § 794(a). Therefore, protected persons are those who satisfactorily demonstrate that they are "handicapped" within the meaning of the law, and are "otherwise qualified" to do the job at issue. "Otherwise qualified" has been held to re-

quire a showing that the handicapped person could "do their job *in spite of* their handicap, rather than could do the job *but for* their handicap." *Stevens v. Stubbs*, 576 F.Supp. 1409, 1415 (N.D.Ga.1983) (emphasis in original), citing *Prewitt v. United States Postal Service, supra*, 662 F.2d at 307. Applying the law to this case, plaintiff is claiming that he can perform the job (patient care attendant) despite the fact that his alleged handicap is the inability to be present at the workplace in accordance with the University's standard attendance policy.

■ There is no evidence which suggests, nor does plaintiff claim that when at work as scheduled, he was unable to perform the duties assigned. Therefore, there is no request or need to supply some accommodation in order for plaintiff, when at work, to complete job duties.

To the contrary, while plaintiff agrees that all job tasks are performable by him when present, it is his mere presence at work in any predictable and reliable manner that is unobtainable. Due to the intermittent and unpredictable incidents of eye inflammation, plaintiff therefore claims that the University must tolerate the uncertainty and risk of plaintiff's being allowed to sporadically appear at his job in the emergency room. An employee of any status, full or part time, cannot be qualified for his position if he is unable to attend the workplace to perform the required duties, because attendance is necessarily the fundamental prerequisite to job qualification. "The law does not protect absenteeism or employees who take excessive leave and are unable to perform the prerequisites of their job." *Stevens v. Stubbs, supra*, 576 F.Supp. at 1415.

Plaintiff has demonstrated an apparent inability to attend work with any degree of predictability. Even were such a condition found to be a "handicap" protected under the Act, plaintiff cannot be accommodated for excessive absenteeism. Where a handicap cannot be accommodated, plaintiff is not otherwise qualified. *See Strathie v. Department of Transportation*, 716 F.2d 227 (3d Cir.1983). Accordingly, defen-

dant's motion for summary judgment on Count I of plaintiff's complaint shall be granted.

B. Count II Must Be Dismissed Because Plaintiff Has Failed To Produce Any Facts Demonstrating That He Was Denied Due Process.

■ Plaintiff has failed to plead any source from which a protectable property interest arises under state law. Therefore, the issue of whether defendant deprived plaintiff of this interest is not properly before the Court. Plaintiff is unable to claim entitlement to due process in accordance with a protected interest not pled. *See J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 614 (3d Cir.1987).

■ In the absence of any property right under state law, Count II of plaintiff's complaint relies on the contention that he possesses a substantive federal right pursuant to the Federal Rehabilitation Act, for which he seeks to recover under 42 U.S.C. § 1983. In essence, plaintiff is alleging that his substantive due process rights were violated because the University, the union, and the hearing panel, did not define or treat plaintiff as handicapped. Therefore, plaintiff claims that the result reached with respect to his termination was arbitrary and capricious. Plaintiff argues that if the Act had been applied to him, a different result would have been reached. As a result, plaintiff maintains that the decision reached was wrong, and that the hearing in his case was not fair.

Plaintiff's argument alleging a substantive due process violation is based upon an erroneous premise. As discussed above, the Court finds that the Act does not apply to plaintiff; therefore, the hearing board's failure to consider the Act as to plaintiff's termination is wholly irrelevant and fails to provide the plaintiff with a valid basis for his argument that he was denied substantive due process.

[7] Even assuming that plaintiff had a protectable property interest under the collective bargaining agreement not pled, I find that plaintiff was afforded all due process owed under the Agreement. De-

spite plaintiff's failure to plead that he is a member of the Local 1199C Service Worker's Collective Bargaining Unit, the facts of this case demonstrate that plaintiff is a member of the union. By virtue of this bargaining agreement, defendant concedes that plaintiff has a protectable property interest, but defendant maintains that plaintiff is likewise bound by the grievance process provided thereunder (Defendant's Memorandum at p. 19). The contract, in Section IV, Management, having been bargained for and agreed to by the union membership and the University, gives the University the exclusive right to develop and apply workrules applicable to the union membership. Plaintiff testified in his deposition that he had received these workrules and was familiar with their contents.

Even if relying on a protectable property interest arising from a contract, and not federal statute, plaintiff is claiming that he received an unfair hearing because defendant failed to consider the Act in making its determination. As discussed earlier, the failure to apply the Act to plaintiff as a federal right under federal statute could not have resulted in an incorrect decision regarding plaintiff's termination, since plaintiff had already been excessively absent for twenty-one (21) days for reasons unrelated to his eye condition. Therefore, even under the contract, failure to consider the Act fails to demonstrate an erroneous decision regarding plaintiff's termination since plaintiff incurred excessive absences sufficient to warrant termination under the collective bargaining agreement. Accordingly, defendant's motion for summary judgment on Count II of plaintiff's complaint shall be granted.

C. Count III Must Be Dismissed Because There Are No Facts Which Support Plaintiff's Claim That Defendant Retaliated Against Plaintiff For Filing A Worker's Compensation Claim.

■ In Count III, plaintiff alleges that defendant University terminated him in retaliation for his filing of a workmen's compensation claim brought in 1985. Plaintiff

attempts to invoke the protection of the First and Fourteenth Amendments to the United States Constitution and seeks recovery pursuant to 42 U.S.C. § 1983. However, I find that plaintiff has failed to show a constitutionally protected interest. Accordingly, plaintiff has no basis for recovery under the federal statute asserted.

Plaintiff argues that defendant retaliated against him for exercising his rights under the Pennsylvania Workmen's Compensation Act, 77 P.S. § 701 *et seq.* By virtue of plaintiff's characterization of defendant Temple University as a state actor, plaintiff now attempts to create a federal cause of action for retaliatory discharge under the First Amendment. As defendant concedes, without waiving any of its defenses, the plaintiff may be entitled to state a claim of retaliatory discharge from his employment under state law. This, however, fails to provide the plaintiff with a basis to bring his action as a federal claim.

Under federal law, plaintiff may maintain a cause of action for retaliatory discharge against defendant only if he can show that defendant has violated a right to free speech protected under the First Amendment. Therefore, whether plaintiff herein can sustain this claim hinges upon whether filing a workman's compensation claim is akin to exercising free speech. Defendant may not discharge an employee on a basis that infringes an employee's constitutionally protected interest in freedom of speech. *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972).

The First Amendment guarantee of free speech "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983) (quoting *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)). The threshold question then is whether plaintiff's speech may be characterized as addressing matters of public concern. *See Connick,* 461 U.S. 138, 103 S.Ct. 1684; *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 2898, 97 L.Ed.2d 315 (1987). There simply is no authority for the proposition that filing a workmen's compensation claim is a means by which to express ideas protected under the First Amendment.

The Pennsylvania Workmen's Compensation Act is intended to compensate employees who suffer injuries sustained on the job, regardless of whether there was negligence on the part of the employee or employer that may have contributed to that injury. The filing of a claim under the statute initiates the process of assessing the circumstances surrounding the injury, and evaluating damages in a timely fashion. As defendant notes, the act of bringing such a claim does not create a forum for idea-sharing, nor is it for the purpose of making allegations or filing charges of wrongdoing against a defendant that may be of public concern. In contrast to the cases which find matters of public concern existing, the filing of a worker's compensation claim is a matter between an individual and his employer. The facts surrounding the termination of plaintiff in the immediate case do not rise to the requisite level of public concern that they can be found to constitute a violation of plaintiff's First Amendment rights.

> When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick,* 461 U.S. 138, 147, 103 S.Ct. 1684, 1670 (1983). Plaintiff has failed to identify a matter of public concern, or presented any claims of such an unusual nature, sufficient to create a separate and distinct federal claim from that of a state law claim for wrongful termination. Accordingly, defendant's motion for summary judgment on Count III shall be granted.

**D. Counts IV and V**

■ The doctrine of pendent jurisdiction is a means for a party to try in one judicial

proceeding all claims arising from a "common nucleus of operative facts" where to do so would promote convenience and sound judicial administration. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 195–6 (3d Cir. 1976). The power of a federal court to exercise pendent jurisdiction over state law claims "requires, at a minimum, a federal claim of sufficient substance to confer subject matter jurisdiction upon the court." *Tully,* 540 F.2d at 196 (citing *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138). If the federal claims in an action are "subject to dismissal under F.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, then the court should ordinarily refrain from exercising [pendent] jurisdiction in the absence of extraordinary circumstances." *Tully,* 540 F.2d at 196.

In accordance with the foregoing, and whereas I have found that plaintiff has failed to state any federal claims in Counts I–III of his complaint, I shall grant defendant's motion for summary judgment on the plaintiff's state law claims set forth in Counts IV and V of plaintiff's complaint.