**Thomas O'MALLEY, Plaintiff,**

**v.**

**The NEW YORK CITY TRANSIT AUTHORITY, Alan Kiepper, President, New York City Transit Authority, Marie Winston, Acting Director of The Workers Compensation Bureau of The New York City Transit Authority, Defendants.**

**No. 91–CV–0636.**

United States District Court,
E.D. New York.

Aug. 11, 1993.

---

Robert Ligansky, New York City, for plaintiff.

Albert C. Cosenza, Vice President and Gen. Counsel, Brooklyn, NY, Evelyn Jonas, of counsel, for defendants New York City Transit Authority.

### MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

On December 19, 1990, plaintiff Thomas O'Malley was dismissed from his position as an associate attorney in the Workers Compensation Bureau ("WCB") of the Law Department of defendant New York City Transit Authority ("NYCTA"). O'Malley claims that he was discharged in retaliation for exercising his First Amendment rights and seeks reinstatement and damages. Defendants move for summary judgment, and for the reasons stated below, their motion is granted ·in part and denied in part.

### I. *Background*

The alleged retaliation flows from two incidents. The first incident involves a valid workers' compensation claim O'Malley filed after sustaining a hernia in the WCB office in January 1986. O'Malley was dismissed from his position several months after filing the claim. He then brought an action against the NYCTA alleging retaliatory discharge in violation of N.Y. Workers' Compensation Law § 120.[1] O'Malley prevailed, and on July 5, 1988, was reinstated with full back pay. *O'Malley v. NYCTA,* 158 A.D.2d 822, 551 N.Y.S.2d 407 (3d Dept.1990).

The second incident concerns the August 1990 appointment of defendant Winston as O'Malley's supervisor. O'Malley learned that in 1982 Winston pled guilty to a one-count information alleging a violation of 18 U.S.C. § 209. *U.S. v. Winston,* 81–CR–0274 (LPG) (S.D.N.Y.1982). Winston pled guilty to accepting a $200 supplementation of her salary from a non-governmental source "given for and because of official acts performed and to be performed by [Winston] in connection with the handling and processing of various individuals' compensation claims...." while she worked as a Claims Examiner in the U.S.

---

1. N.Y. Workers' Compensation Law § 120 (McKinney Supp.1993) reads in pertinent part that:

   [i]t shall be unlawful for any employer ... to discharge ... an employee ... because such employee has claimed or attempted to claim compensation from such employer....

Department of Labor, Employment Standards Administration, Office of Workers' Compensation Programs/Longshore Division. *Id.* On April 12, 1990, O'Malley wrote a letter to defendant Alan Kiepper, President of NYCTA, informing him that "it was totally improper to place Ms. Winston as Acting Director of the WCB when she had previously pled guilty to a federal crime while working for the U.S. Dept. of Labor Workers' Compensation Program." Def.Ex. 9 (Letter, O'Malley to Kiepper, April 12, 1990). He also wrote that Winston "did not disclose or reveal [the conviction] on her employment application...." *Id.*

NYCTA Vice President and General Counsel Albert Cosenza investigated O'Malley's allegations and informed Kiepper by memorandum that Winston "apprised the Human Resource Department ... of the past conviction in her employment application." Def. Ex. 9 (Memorandum, Cosenza to Kiepper, July 11, 1990). In fact, Winston indicated in her employment application that she was convicted of a crime, but in the space provided to "give full details" about the same, she wrote only, "Misdemeanor—1981 (1 Day Probation)." Def.Ex. 14. On July 11, 1990, Kiepper wrote to O'Malley that "the details you have supplied concerning an employee in the Workers Compensation Section of the Law Department have been previously reviewed. No impropriety has been found concerning the application for employment you have referenced." Def.Ex. 9 (Letter, Kiepper to O'Malley, July 11, 1990).

At an unspecified date, O'Malley allegedly left a copy of Winston's criminal disposition papers on the desk of NYCTA employee Jill Johnson. Def.Ex. 12, Friedus Dep. at 25. He also continued to press the matter in letters to Kiepper dated July 3, 1990 and November 26, 1990. On December 6, 1990, Robin C. Stevens, Assistant to Kiepper, responded to O'Malley's letters by explaining to him that the NYCTA had reviewed Winston's employment application "a number of times" and that her record of conviction was known when she was hired. Def.Ex. 9 (Letter, Stevens to O'Malley, December 6, 1990).

Meanwhile, on November 19, 1990, Winston notified O'Malley by memorandum that his work performance in a workers' compensation matter involving Bruce Dinuzzo was "unacceptable," and that he would be fired absent future satisfactory performance.[2] Def.Ex. 5 (Memorandum, Winston to O'Malley, November 19, 1990). On the same day, O'Malley replied to Winston in a memorandum that her critique of his work was "frivolous." Def.Ex. 5 (Memorandum, O'Malley to Winston, November 19, 1990). Matters came to a boil when, on December 6, 1990, O'Malley and Winston had an argument in the WCB office. Def.Ex. 11. On December 19, 1990, Winston dismissed O'Malley pursuant to the instructions of NYCTA Executive Assistant General Counsel Eugene Friedus. Def.Ex. 12, Friedus Dep. at 10–11.

O'Malley then commenced the instant lawsuit alleging five causes of action as follows: (1) retaliatory discharge for "complaining about keeping" Winston as Acting Director of WCB, in violation of the First and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983; (2) retaliatory discharge for informing the defendants about Winston's criminal record in violation of the same; (3) retaliatory discharge for his successful N.Y. Workers' Compensation Law § 120 action in violation of the same; (4) violation of N.Y. Civil Service Law § 75(1)(b); and (5) violation of N.Y. Constitution, Article I, § 8.

Defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56 on the first three causes of action by contending that O'Malley's speech is not protected under the First and Fourteenth Amendments and § 1983. Defendant NYCTA alternatively disclaims liability under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and defendant Winston by asserting a claim of qualified immunity.

## II. *Discussion*

Summary judgment is proper only when, "viewing the evidence in the light most favorable to the nonmovant, the court can determine that 'there is no genuine issue of mate-

---

**2.** Complaints about O'Malley's work performance in other matters had been made in August 1989 and January 1990 by NYCTA employee Anthony Ardolino. Def.Ex. 2, 3.

rial fact and the movant is entitled to judgment as a matter of law.'" *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir.1993), quoting *Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992). The Court must resolve all ambiguities and draw all doubtful inferences against the moving parties. *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991).

■ O'Malley claims that he was dismissed for his successful workers' compensation retaliatory discharge lawsuit and for exposing Winston's criminal record. A public employee who claims to be discharged for the exercise of First Amendment rights must establish, "as an initial matter, that his speech may be 'fairly characterized as constituting speech on a matter of public concern.'" *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058 (2d Cir.1993), quoting *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 2896–97, 97 L.Ed.2d 315 (1987) (internal quotations omitted). "Once the employee establishes that he has spoken as a citizen on a matter of public concern, he must also establish that that speech was at least a 'substantial' or 'motivating' factor in the discharge." *Id.* at 1058, quoting *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). If the employee carries these burdens, the employer can avoid liability by demonstrating either that (1) "it would have made the same employment decision in the absence of the protected conduct;" or (2) the "employee's conduct interfered with the employer's 'effective and efficient fulfillment of its responsibilities to the public.'" *Id.* at 1059, quoting *Connick v. Myers*, 461 U.S. 138, 150, 103 S.Ct. 1684, 1691–92, 75 L.Ed.2d 708 (1983).

A. *First Incident: Workers' Compensation Retaliatory Discharge Lawsuit*

■ O'Malley's workers' compensation retaliatory discharge lawsuit involves the First Amendment right to petition the government for a redress of grievances, which is "'generally subject to the same constitutional analysis' as the right to free speech....'" *Id.*, quoting *Wayte v. United States*, 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 1532 n. 11, 84 L.Ed.2d 547 (1985). The initial question is whether this speech addressed matters of public concern. In *Santiago v. Temple University*, 739 F.Supp. 974, 981 (E.D.Pa.1990), *aff'd without op.*, 928 F.2d 396 (3d Cir.1991), the court determined that a workers' compensation claim was not speech which addressed matters of public concern because filing such a claim "is a matter between an individual and his employer." Although *Santiago* is distinguishable from the instant case because it did not involve a retaliatory discharge lawsuit arising out of a workers' compensation claim, its rationale applies with equal force here. O'Malley brought his retaliation lawsuit in order to regain his job and there is no evidence that the relevant facts were of public concern. Summary judgment must be granted to defendants on the third cause of action.

B. *Second Incident: Exposing Winston's Criminal Record*

■ The opposite is true of O'Malley's disclosure about Winston. There is no doubt that the public would be concerned with the revelation that an official in a position of public trust had previously breached a similar public trust elsewhere in violation of federal law. The disclosure also raises legitimate public concerns about the integrity of hiring practices at NYCTA.[3]

■ Defendants urge that O'Malley's speech is not a matter of public concern when taken in context. They argue that his letters were "part of a concerted plan to discredit any persons in positions of authori-

---

**3.** Defendants justify hiring Winston because "[p]ursuant to § 752 of the New York State Corrections Law, the Authority is prohibited from denying employment to persons having criminal records." Def. Local Rule 3(g) Statement, ¶ 15. This justification is incorrect. N.Y. State Corrections Law § 752 (McKinney 1987) reads in pertinent part that:

[n]o application for ... employment ... shall be denied by reason of the applicant's having been previously convicted of one or more criminal offenses ... *unless:*

(1) *there is a direct relationship between one or more of the previous criminal offenses and the specific ... employment sought....* [emphasis added].

ty, before they could criticize his own marginal job performance, in order to be able to claim retaliation...." Def.Mem.L. at 6. Nevertheless, "a topic otherwise of public concern ... [does not] ... *lose* its importance merely because it arises in an employee dispute." *Hall v. Ford*, 856 F.2d 255, 260 (D.C.Cir.1988); *see Wulf v. City of Wichita*, 883 F.2d 842, 860 n. 26 (10th Cir.1989); *Rode v. Dellarciprete*, 845 F.2d 1195, 1201–02 (3d Cir.1988). To restate the proposition differently, the content of the disputed speech rather than the motive behind its utterance is the "greatest single factor" in the analysis. *Belk v. Town of Minocqua*, 858 F.2d 1258, 1264 (7th Cir.1988), quoting *Berg v. Hunter*, 854 F.2d 238, 243 (7th Cir.1988), *cert. denied*, 489 U.S. 1053, 109 S.Ct. 1314, 103 L.Ed.2d 583 (1989). Thus, the matters of public concern raised by O'Malley's disclosure about Winston cannot be negated by the possibility that they originated out of an employee dispute.

The next question is whether O'Malley's protected speech was a substantial or motivating factor in his discharge. Defendants assert that they discharged O'Malley because of his unsatisfactory work, his attempt to undermine Winston's authority and his argument with Winston in the WCB office. However, this explanation can be fairly disputed by the fact that Winston drafted her memorandum about O'Malley's poor work performance in the Dinuzzo case during the midst of his revelations about her. *DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). Thus, there are genuine issues of material fact concerning causation.

■ Defendant NYCTA alternatively disclaims liability under § 1983 pursuant to *Monell, supra*, 436 U.S. at 658, 98 S.Ct. at 2018, by arguing that a single wrongful act by a non-policy making public official is an insufficient basis to establish liability against it. This argument assumes that Friedus, who directed Winston to fire plaintiff, is a non-policy making official without final authority concerning the appointment and removal of employees at the NYCTA. Whether a particular official has "final policymaking authority" which would subject a municipal entity to § 1983 liability is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988), quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). While NYCTA asserts that Kiepper and the NYCTA Vice President of Human Resources have had the personnel function delegated to them from the Chairman of the NYCTA, they have not provided any support for this assertion. This question of material fact precludes a determination as to the NYCTA's liability under *Monell*. *See Bouman v. Block*, 940 F.2d 1211, 1231 (9th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991).

■ Winston argues that she is protected by the doctrine of qualified immunity for executing Friedus' order to discharge O'Malley. Winston is not immune from suit merely because she followed Friedus' orders. *Raysor v. Port Authority of New York & New Jersey*, 768 F.2d 34, 38 (2d Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986). Nor is she entitled to qualified immunity through the erroneous assertion that the applicable law concerning a public employee's First Amendment rights was not clearly established at the time of O'Malley's discharge. *Vasbinder v. Ambach*, 926 F.2d 1333, 1341 (2d Cir.1991). Finally, Winston is entitled to qualified immunity if O'Malley's speech about Winston was so disruptive to the effective and efficient operation NYCTA that a reasonable and prudent person could not have anticipated that discharging him would violate his First Amendment rights. *DiMarco v. Rome Hosp. and Murphy Memorial Hosp.*, 952 F.2d 661, 666 (2d Cir.1992). Since this determination is "inextricably bound up with the merits" of O'Malley's claims, it cannot be resolved on summary judgment. *Id.* quoting *Bolden v. Alston*, 810 F.2d 353, 356 (2d Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987).

For the reasons stated above, summary judgment is GRANTED on the third cause of action and is DENIED in all other respects.

SO ORDERED.