Vicky L. STANLEY, Plaintiff,

v.

LESTER M. PRANGE, INC., Defendant.

Civil Action No. 95–3939.

United States District Court, E.D. Pennsylvania.

Oct. 6, 1998.

·Josee G. Charvet, Stephen S. Pennington, Center for Disability Law and Policy, Philadelphia, PA, Gerald J. Williams, Jeffrey M. Daitz, Williams and Cuker, Philadelphia, PA, for plaintiff.

Michael A. Moore, John L. Senft, Barley, Snyder, Senft & Cohen, Lancaster, PA, John L. Senft, Barley, Snyder, Senft & Cohen, York, PA, for defendant.

## *MEMORANDUM*

ROBERT F. KELLY, District Judge.

The Plaintiff brought this action alleging violations of the Americans with Disabilities Act ("ADA"), 28 U.S.C. §§ 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S. §§ 951 *et seq.* Presently before the Court is the Defendant's Motion for Summary Judgment.[1] For the reasons that follow, the Defendant's Motion will be granted.

### Background

The Defendant Lester M. Prange, Inc. is a trucking company which employed approximately 65 truck drivers during the relevant time period of this action. Because the Defendant engages in interstate commerce, its truck drivers are subject to regulation by the United States Department of Transportation ("DOT"). Among other things, DOT places limitations on the number of hours that a driver may be on the road during a 24–hour period and during an eight-day period. In order to comply with DOT's guidelines, drivers are required to maintain daily logs which document their driving time.

In June of 1992, the Plaintiff was hired by the Defendant as a log clerk. The Plaintiff had previously been employed in a similar position by another trucking company. During her previous employment, she suffered a recurrence of a back injury and was on worker's compensation disability leave beginning in October of 1991. Park Prange, one of the Defendant's owners, was aware of the Plaintiff's back impairment when he offered her a position as a log clerk following her recovery.

The Plaintiff's job duties included meeting with the drivers weekly to review their logs and make sure that they were being completed correctly, reviewing the logs to detect falsification, entering the logs into a computer where a software program would check them for violations of DOT rules, training drivers in the proper completion of the logs, addressing problems truck drivers would encounter while they were on the road, and other administrative duties. The drivers arrived at the Defendant's place of business at unpredictable times and generally only participated in their reviews at the Plaintiff's insistence.

In August of 1993, the Plaintiff suffered another recurrence of her back injury at work. She was unable to return to work over the next several months, and signed a Supplemental Agreement reinstating worker's compensation benefits as a result of her total disability.

---

1. This Motion was filed on March 27, 1998. This case was transferred to my docket from the docket of the Honorable E. Mac Troutman upon his retirement.

The Defendant initially tried to provide the Plaintiff with work at her home. A representative delivered logs to her so that she could review them manually. But this practice stopped when the Defendant was informed by its insurance representative that this violated DOT regulations. On approximately three occasions, drivers came to meet with the Plaintiff at her home, which was in a trailer park approximately 10 minutes from the Defendant's place of business. The Defendant stopped this practice when its insurer warned that there were substantial liability concerns with sending drivers there particularly because there was no place to park the trucks and they had to be left on the shoulder of a highway.

On January 21, 1994, the Plaintiff's physician prepared a note stating that the Plaintiff could "perform her job at home and a limited time in the office as tolerated." (Def.'s Mot. for Summ.J., Ex. 7). Six days later, the Plaintiff enrolled in an intensive two-week course of physical therapy in Maryland (approximately 90 minutes from the Defendant's office) which required that she stay overnight.

On February 10, 1994, the Plaintiff's physician prepared another note permitting the Plaintiff to return to work up to four hours per day and to work at home. The note also provided that the Plaintiff would continue to receive therapy five times per week but that this amount would gradually be reduced. The physician did state that she anticipated the Plaintiff eventually returning to work full-time, but gave no timetable. (*See* Def.'s Mot. for Summ.J., Ex. 10).

That same day, the Defendant terminated the Plaintiff's employment. The Plaintiff received written confirmation of her termination by letter dated February 11, 1994. The letter cited as reasons for her termination the necessity of the Plaintiff's attendance at work and the backlog created by the Plaintiff's absence that had harmed morale. The Defendant invited the Plaintiff to reapply for employment when her condition improved.

Within a few weeks of her discharge, the Plaintiff's condition worsened following another accident. As of her deposition on December 20, 1996, the Plaintiff had not yet recovered and she confirmed that she had received worker's compensation benefits for total disability from September of 1993 through December of 1996.

### Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party has the burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party cannot rest on the pleading, but must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this case, the Plaintiff, as the nonmoving party, is entitled to have all reasonable inferences drawn in her favor. *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).

### Discussion

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability" with respect to various employment-related matters, including termination.[2]  42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical ... limitations of an otherwise qualified individual with a disability who is ... an employee, unless [the employer] can demonstrate that the accommodation would impose an undue

---

**2.** Pennsylvania courts generally interpret the PHRA in accord with the ADA. *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir.1996). There-

fore, this Court's analysis applies to the Plaintiff's PHRA claims as well as her ADA claims.

hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

The Plaintiff claims that the Defendant discriminated both in terminating her employment and in failing to reasonably accommodate her. (*See* Compl. at ¶ 1). In order to present a prima facie case of discrimination under the ADA, the Plaintiff must demonstrate that: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir.1998). The Defendant argues for purposes of this Motion that the Plaintiff is not "otherwise qualified" and thus is unable to satisfy the second element.

The Third Circuit has set forth a two-part test to determine whether someone is a "qualified individual with a disability." *Taylor v. Phoenixville School Dist.*, 998 F.Supp. 561, 570 (E.D.Pa.1998). First, the individual must satisfy the prerequisites for the position, such as educational background, experience, skills, licenses, and other requirements. *Gaul*, 134 F.3d at 580. Second, the individual must be able to perform the essential functions of the position with or without reasonable accommodation. *Id.* The Defendant does not dispute that the Plaintiff satisfied the prerequisites for her position as log clerk. Further, the Plaintiff does not contend that she could have performed the essential functions of her job without reasonable accommodation. Therefore, the Court must determine if the Plaintiff can perform the essential functions of her job with reasonable accommodation.

The Plaintiff must make at least a facial showing that her proposed accommodation is possible. *Gaul*, 134 F.3d at 580; *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir.1996). If she is able to make out this showing, the Defendant must prove that the accommodation requested is unreasonable or would cause an undue hardship on the employer. *Gaul*, 134 F.3d at 580. The accommodation proposed by the Plaintiff is that set forth in her physician's note of February 10, 1994. Under such an arrangement, the Plaintiff would spend up to four hours per day at the Defendant's premises and would perform the remainder of her tasks at her home.

Because most jobs involve "team work under supervision rather than solitary unsupervised work, and team work under supervision generally cannot be performed at home without a substantial reduction in the quality of the employee's performance," an employer is not generally required to accommodate a disability by allowing the disabled worker to work at home. *Vande Zande v. State of Wisconsin Dept. of Admin.*, 44 F.3d 538, 544–45 (7th Cir.1995); *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir.1997). It would take an extraordinary case for the employee to be able to create a triable issue of the employer's failure to allow the employee to work at home.[3] *Vande Zande*, 44 F.3d at 545.

The Plaintiff's position required her presence at the workplace in order to perform virtually all of the essential functions of her job. The Plaintiff's interaction with other employees included training the drivers, meeting with the drivers in order to review their logs with them, and addressing problems the drivers encountered on the road. Further, the computer into which the Plaintiff entered the drivers' logs was also located at the Defendant's office. Additionally, the Plaintiff has not presented any facts to indicate that this was one of the exceptional cases in which an employee's productivity and the quality of her performance would not be reduced by allowing her to work at home.

---

**3.** In addition, some courts have held that attendance is a necessary element of most jobs. *See Tyndall v. National Educ. Centers*, 31 F.3d 209, 213 (4th Cir.1994); *Santiago v. Temple Univ.*, 739 F.Supp. 974, 979 (E.D.Pa.1990), *aff'd*, 928 F.2d 396 (3d Cir.1991).

*See Smith,* 129 F.3d at 867. The loss in productivity, caused not only by the Plaintiff's absence but also by the additional time that would be spent by drivers traveling to the Plaintiff's residence would certainly be costly to the Defendant. Based upon these facts, as well as the lack of a safe place for the drivers to park their trucks near the Plaintiff's residence, it would certainly be unreasonable and would cause an undue hardship on the Defendant to allow the Plaintiff to work at home.

In addition to these problems presented by the Plaintiff's proposed accommodation, DOT regulations placed limits upon removal of the drivers' logs from the Defendant's office. The regulation at issue provided:

> Driver's records of duty status for each calendar month may be retained at the driver's home terminal until the 20th day of the succeeding calendar month. Such records shall then be forwarded to the carrier's principal place of business where they shall be retained with all supporting documents for a period of 6 months from date of receipt.

49 C.F.R. § 395.8(k)(1).[4] This regulation clearly prohibited the removal of the logs from the Defendant's office. The Plaintiff argues that the phrase "may be retained at the driver's home terminal" would permit the removal of the logs to the Plaintiff's home so that she could review them there until the 20th day of the succeeding month. Under this theory, the logs could be retained at the driver's home terminal or any other place on earth until the 20th day of the succeeding month. But such a reading makes little sense in the context of the regulation. The regulation permitted retention of the logs at the driver's home terminal until the time when they were to be forwarded to the carrier's principal place of business. Thus, there were only two places where the logs could be lawfully kept: the driver's home terminal and the carrier's principal place of business. If the Defendant had permitted the Plaintiff to review the logs in her home, it would have been in violation of the regulation.

**4.** It should be noted that since the time of the events in this case (indeed, since this Motion was filed) the regulation at issue has been amended. *See* 63 Fed.Reg. 33254, 33279 (June 18, 1998).

The Plaintiff also argues that she has stated a claim for retaliation under the ADA, and that summary judgment should be denied based upon that claim. *See* 42 U.S.C. § 12203(a). But no retaliation claim is set forth in the Complaint. "The ADA is one statutory scheme, but it provides more than one cause of action." *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 n. 1 (3d Cir.1997). This Court will not find an implicit cause of action for retaliation where the Plaintiff has failed to state one in the Complaint. To do so would be unfair to the Defendant, who was not placed on "fair notice" that the Plaintiff intended to pursue such a claim. *Id.* Therefore, this argument is not an appropriate basis for denial of the Defendant's Motion.

### Conclusion

In summary, the Plaintiff has failed to demonstrate that she was a qualified individual with a disability. She was not able to show that she could perform the essential functions of her position with a reasonable accommodation. Thus, she cannot state a prima facie case for discrimination under the ADA. Further, because the Plaintiff's proposed accommodation is unreasonable and would cause an undue hardship on the Defendant, she cannot state a claim for failure to provide a reasonable accommodation. Therefore, there is no genuine issue of material fact and summary judgment will be entered in favor of the Defendant.

An appropriate Order follows.

### *ORDER*

AND NOW, this 6TH day of October, 1998, upon consideration of the Defendant's Motion for Summary Judgment, and all responses thereto, it is hereby ORDERED that:

1. the Defendant's Motion is GRANTED;

2. the Clerk of Court is directed to mark this case CLOSED.

The subsequent amendment has no bearing on this case because the Court's focus is upon the time of the employment decision. *Gaul,* 134 F.3d at 580.