

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-22-1998

# Gaul v. Lucent Tech Inc

Precedential or Non-Precedential:

Docket 97-5114

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Gaul v. Lucent Tech Inc" (1998). *1998 Decisions.* Paper 19.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/19

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 22, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5114

DENNIS E. GAUL,
        Appellant

v.

*LUCENT TECHNOLOGIES INC.;
        JOHN DOES 1-100; JANE DOES 1-100;
ABC CORP.; XYZ CORP.

(*Amended per the Clerk's 9/29/97 order)

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 94-cv-05263)

Argued December 4, 1997

BEFORE: COWEN, McKEE and WEIS,
Circuit Judges

(Filed January 22, 1998)

        Linda B. Kenney, Esq.
        Gregory S. Schaer, Esq. (argued)
        The Galleria
        2 Bridge Avenue
        Atrium Building #5, 2nd Fl.
        Red Bank, NJ 07701

         Counsel for Appellant

        Francis X. Dee, Esq. (argued)
        Carpenter, Bennett & Morrissey
        100 Mulberry Street
        Three Gateway Center
        Newark, NJ 07102

         Counsel for Appellee

OPINION OF THE COURT

COWEN, Circuit Judge.

This is an appeal by plaintiff-appellant, Dennis Gaul, from the February 21, 1997, order of the United States District Court for the District of New Jersey granting summary judgment in favor of defendant-appellee, AT & T, Inc. (AT & T), and dismissing plaintiff's complaint. Gaul v. AT & T, 955 F. Supp. 346 (D.N.J. 1997). The district court held that plaintiff was not disabled under the Americans with Disabilities Act (ADA), 42 U.S.C. S 12101 et seq., because: (1) his depression and anxiety-related disorders were not impairments that substantially limited his major life activity of working; (2) there was no record of such impairment; and (3) plaintiff was not regarded as having such impairment. The district court also held that plaintiff was neither "disabled" under the ADA nor "handicapped" under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 et seq., because his proposed accommodation--transfer to a position where he would not be subjected to prolonged and inordinate stress by coworkers--was unreasonable as a matter of law. Finally, having concluded as a legal matter that plaintiff's proposed accommodation was unreasonable, the district court held that plaintiff's state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and constructive discharge must also fail. We affirm.

I.

Gaul began working for AT & T in 1981 as a Technical Associate and was promoted to Senior Technical Associate

2

in 1983. He was diagnosed as suffering from depression and anxiety-related disorders in March, 1984. Although his condition was successfully controlled for more than a year with anti-depressant drugs, Gaul suffered a nervous breakdown in 1986. He was hospitalized for several weeks and was absent from work for approximately three months during that year.

Gaul eventually returned to work in early 1987. Once again, he received drug treatment, and his condition appeared under control. Indeed, by late 1988 or early 1989, Gaul received a two-step promotion to Member of Technical Staff. In June, 1990, however, Gaul suffered a relapse after receiving an unfavorable performance review from his manager at that time, Joe Warren, and again went out on disability leave.

While out on disability leave, Gaul was contacted by Tang Jampathon, a supervisor from AT & T's Cordless Telephone Department. Jampathon expressed interest in having Gaul work on a project for which Gaul's skills were required. Gaul explained to Jampathon that he would be unable to work under conditions of prolonged and inordinate stress, and Jampathon assured him that the people in the department would be very supportive. After receiving this assurance, Gaul began seeing Dr. Morris Reby, a board certified psychiatrist, about his desire to return to work when medically able. Dr. Reby diagnosed Gaul as having adjustment disorder with depression, anxiety, and obsessive/compulsive personality. Gaul had several more visits with Dr. Reby and was soon authorized to return to work on a "limited basis."

Gaul returned to work on September 4, 1990, and was permitted to work short hours for one week. From September 4, 1990, until the time he started to work with Donovan Folkes, a coworker, Gaul had no problem with stress, except when a dispute arose in August, 1991, between two coworkers. However, this situation rapidly changed in December, 1991, when he was assigned to work with Folkes on Phase II of the "International Project," also known as the "Herring Project," the purpose of which was to design a cordless telephone for the international market. Gaul was responsible for physical design of the base unit of

the telephone set, and Folkes was assigned the handset portion of the unit.

Gaul claims that almost from the outset, he and Folkes had difficulty working together, resulting in a constant source of stress for Gaul. Gaul accused Folkes of using information from "his" data base on the base unit and of not sharing information with him. Gaul also claims that Folkes "may have" taken credit for one of Gaul's ideas and that it "appeared" that Folkes would not acknowledge Gaul's contributions to the team. He also claims that Folkes failed to note Gaul's contribution during a March or April, 1992 meeting and failed to list Gaul as a "co-author" on a tooling estimate.

Gaul claims that he spoke to various people at AT & T about his difficulties with Folkes. He first attempted to resolve the problems with Folkes himself, but when these attempts were unsuccessful, he complained, without avail, to Jampathon in February, 1992. Gaul also sought help from Paul Newland, team leader on the Herring Project, and Patricia Kaufman, an Ombudsperson at AT & T. However, neither Newland nor Kaufman provided assistance to Gaul.

In April, 1992, Gaul told Jampathon's replacement, Edwin Muth, that the situation with Folkes was causing him tremendous stress. Gaul again spoke to Muth in April or May, 1992, and advised him that he was still having trouble with Folkes. Muth told Gaul that he should take the matter up with Steve Bourne, the department head.

Gaul spoke briefly to Bourne about Folkes in May or June, 1992, and again in June or July, 1992. Bourne then arranged a meeting with both Gaul and Folkes in mid-August, 1992. Gaul contends that during this meeting he told Bourne he was "stressed out" and suggested that he be moved off the project. Shortly thereafter, Gaul allegedly asked Bourne that he be transferred to a lower-stress position. Specifically, Gaul claims that he told Bourne:

> . . . . . "Mr. Bourne, if you don't help me, or if you can't help me at this point, I am going to get very sick, and I'm going to pop."
>
> Again, I looked him in the eye. I said, "Do you know what I mean by pop?"

4

And I was trying to get an answer from him. He said, "I don't know what you mean by pop."

I said, "Well, I am going to have a nervous breakdown, and I wouldn't be able to come back to work."

App. at 492-93. During this meeting, Bourne did not respond one way or another to Gaul's transfer request. Gaul admits that he never followed up on his transfer request.

Approximately two weeks later, on September 11, 1992, Gaul went out on disability leave. Since that time, he has been out on long-term disability and has been receiving payments from AT & T's disability insurance plan and from the Social Security Administration. He has also made a worker's compensation claim against AT & T, asserting that his disability is work-related. Gaul claims that he cannot perform his former duties at AT & T, nor, in fact, could he work for any employer, unless he is protected from prolonged and inordinate stress.

On September 9, 1994, Gaul filed a complaint against AT & T, alleging four causes of action. In the first count, Gaul alleges that he was handicapped within the meaning of the NJLAD and that AT & T violated the NJLAD by failing to accommodate his alleged handicap. In the second count, Gaul alleges that AT & T violated public policy as embodied in the ADA by failing to accommodate his disability. In the third and fourth counts, respectively, Gaul alleges that AT & T breached a contract with him and breached an implied covenant of good faith and fair dealing.

AT & T subsequently filed a motion for summary judgment. The district court entered an order granting the motion on February 21, 1997. The district court first determined that Gaul's ADA claim must fail because he was not "disabled" within the meaning of the act. More specifically, the district court concluded that Gaul's depression was not an impairment substantially limiting his major life activity of working, that there was no record of such impairment, and that there was no evidence AT & T regarded Gaul as having such impairment. Next, the district court concluded that plaintiff's NJLAD claim must

5

also fail because his request to be transferred away from coworkers who subjected him to prolonged and inordinate stress was unreasonable as a matter of law.1 Finally, the district court determined that Gaul's claims for breach of contract, breach of implied covenant of good faith and fair dealing, and constructive discharge must fail because these claims could not be maintained unless Gaul's proposed accommodation was reasonable. This appeal followed.

II.

The district court had subject matter jurisdiction over plaintiff's ADA claim pursuant to 28 U.S.C. S 1331 and supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. S 1367. We have appellate jurisdiction pursuant to 28 U.S.C. S 1291.

In reviewing an order granting summary judgment, we exercise plenary review. Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993). Viewing the facts in the light most favorable to the nonmoving party, we look to see if there was a genuine issue of material fact and, if not, whether the moving party was entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986).

III.

The primary issue before us is whether Gaul's request to be transferred away from individuals causing him

_____

1. The district court rejected AT & T's alternative argument that Gaul's NJLAD claim must fail because he did not present any competent expert medical evidence that he was handicapped at the time he stopped working at AT & T. The court found that, for purposes of the summary judgment motion, "the testimony and documentary evidence by plaintiff's treating physician, including that by defendant's own physicians, [was] sufficient to establish that Gaul does in fact suffer from
stress and depressive disorders." Gaul, 955 F. Supp. at 349. Although AT & T continues to press this argument on appeal, we need not reach it because we also conclude that Gaul's proposed accommodation was unreasonable as a matter of law. See infra.

6

prolonged and inordinate stress was unreasonable as a matter of law under the ADA. We conclude that it is.

Congress enacted the ADA in 1990 in an effort to prevent otherwise qualified individuals from being discriminated against in employment based on a disability. See 29 C.F.R. pt. 1630, App. at 347-48 (1997). The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. S 12112(a) (1995). The Act defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that individual holds or desires." Id. S 12111(8). An employer discriminates against a qualified individual when it does "not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]." Id. S 12112(b)(5)(A). "Reasonable accommodation" means measures such as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, . . . and other similar accommodations for individuals with disabilities." Id. S 12111(9).

A plaintiff presents a prima facie case of discrimination under the ADA by demonstrating: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination. See Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).2 This matter
_____

2. Although Shiring interpreted the Rehabilitation Act of 1973, 29 U.S.C. S 794 et seq., it is relevant to our analysis of the ADA because "in 1992 the Rehabilitation Act was amended to incorporate the standards of several sections of the ADA, including the section defining `reasonable accommodation.' " Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997) (citations omitted).

7

turns on the second element, namely, whether Gaul was a "qualified individual."3 "[T]he burden is on the employee to prove that he is `an otherwise qualified' individual." Id. at 832 (citing Buckingham v. United States, 998 F.2d 735, 739–40 (9th Cir. 1993)).

A two-part test is used to determine whether someone is "a qualified individual with a disability." 29 C.F.R. pt. 1630, App. at 353–54. First, a court must consider whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." Id. at 353. Second, the court must consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." Id. "The determination of whether an individual with a disability is qualified is made at the time of the employment decision." Id. at 353–54; see also Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th Cir. 1996).

In the present matter, AT & T does not suggest that Gaul lacked the requisite experience, skill, or education for the vacancy he sought. Nor does Gaul suggest that he could have performed the essential functions of his former job

_____

3. AT & T also argues that plaintiff's ADA claim must fail because he is not disabled within the meaning of the act. More specifically, AT & T asserts that plaintiff has not shown that his impairment substantially limits his major life activity of working because Gaul is not incapable of performing either "a class of jobs or a broad range of jobs in various classes" as compared to the average person having comparable training, skills, and abilities. Appellee's Br. at 29. AT & T also contends that Gaul
has failed to set forth any evidence that his impairment substantially limited any other major life activities (e.g., sleeping, eating, thinking).
Because we conclude below that plaintiff's proposed accommodation is unreasonable as a matter of law, we need not reach this alternative argument. Nevertheless, we strongly suspect that a plaintiff who is unable to work with individuals who cause him "prolonged and inordinate stress" cannot be said to be incapable of performing a "class of jobs or a broad range of jobs in various classes." Cf. Weiler v. Household Finance Corp., 101 F.3d 519, 524 (7th Cir. 1996) ("The major life activity of working is not `substantially limited' if a plaintiff merely
cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance." (citations omitted)).

8

without reasonable accommodation. Indeed, Gaul admits that "because his fears of returning to the same stressful work environment depressed him further, his anxieties grew and were affecting him to the point that Dr. Reby found him to be totally disabled." Appellant's Br. at 12. Thus, we must consider whether plaintiff has demonstrated a genuine issue of material fact regarding his ability to perform the essential functions with reasonable accommodation. White v. York Int'l Corp., 45 F.3d 357, 362 (10th Cir. 1995).

Gaul can satisfy this burden if he can make at least a facial showing that his proposed accommodation is possible. See Shiring, 90 F.3d at 832. More specifically, Gaul must "demonstrate that there were vacant, funded positions whose essential duties he was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position as [his former job]." Id. Gaul must also demonstrate as part of his facial showing that the costs associated with his proposed accommodation "are not clearly disproportionate to the benefits that it will produce." Borkowski v. Valley Cent. School Dist., 63 F.3d 131, 138 (2d Cir. 1995). The term "costs" includes financial as well as administrative burdens on a company. Cf. School Bd. of Nassau County, Fla. v. Airline, 480 U.S. 273, 287 n.17, 107 S. Ct. 1123, 1131 n.17 (1987). If Gaul is able to make out a prima facie showing, "the defendant then bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable, or would cause an undue hardship on the employer." Shiring, 90 F.3d at 831.

Based on the foregoing, we conclude that Gaul has failed to satisfy his burden for three reasons. First, Gaul's proposed accommodation would impose a wholly impractical obligation on AT & T or any employer. Indeed, AT & T could never achieve more than temporary compliance because compliance would depend entirely on Gaul's stress level at any given moment. This, in turn, would depend on an infinite number of variables, few of which AT & T controls. Moreover, the term "prolonged and inordinate stress" is not only subject to constant change, it

is also subject to tremendous abuse. The only certainty for AT & T would be its obligation to transfer Gaul to another department whenever he becomes "stressed out" by a coworker or supervisor. It is difficult to imagine a more amorphous "standard" to impose on an employer.

Second, Gaul's proposed accommodation would also impose extraordinary administrative burdens on AT &T. In order to reduce Gaul's exposure to coworkers who cause him prolonged and inordinate stress, AT & T supervisors would have to consider, among other things, Gaul's stress level whenever assigning projects to workers or teams, changing work locations, or planning social events. Such considerations would require far too much oversight and are simply not required under law.

Third, by asking to be transferred away from individuals who cause him prolonged and inordinate stress, Gaul is essentially asking this court to establish the conditions of his employment, most notably, with whom he will work. However, "[n]othing in the ADA allows this shift in responsibility." Weiler, 101 F.3d at 526. "Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons." Wernick v. Federal Reserve Bank of N.Y., 91 F.3d 379, 384 (2d Cir. 1996).

In sum, Gaul does not meet his burden under Shiring because his proposed accommodation was unreasonable as a matter of law. Therefore, Gaul is not a "qualified individual" under the ADA, and AT & T's alleged failure to investigate into reasonable accommodation is unimportant. See Mengine, 114 F.3d at 420 (quoting Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997)). Accordingly, the district court properly granted summary judgment as to Gaul's ADA claim.

Having concluded that Gaul's proposed accommodation was unreasonable as a matter of law under the ADA, it follows that his NJLAD claim must also fail. See Ensslin v. Township of North Bergen, 275 N.J. Super. 352, 364, 646

A.2d 452, 458 (App. Div. 1994) (New Jersey courts considering reasonable accommodation under NJLAD look to case law interpreting federal law on same point) (citing Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 497 n.3, 446 A.2d 486, 493 n.3 (1982)). It also follows that plaintiff's remaining state law claims (i.e., breach of contract, breach of implied covenant of good faith and fair dealing, and constructive discharge) must also fail because they too are based on defendant's alleged failure to provide reasonable accommodations. Accordingly, the district court properly granted summary judgment as to plaintiff's state law claims.

IV.

The February 21, 1997, order of the district court will be affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

11