Patricia S. CONROY, Appellant,

v.

TOWNSHIP OF LOWER MERION;
Lower Merion Township Workers
Association.

No. 02–3217.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) June 23, 2003.

Decided Aug. 2, 2003.

Lloyd T. Hoppe, Jr., C. Scott Shields, Shields & Hoppe, Media, PA, for Appellant.

Joseph J. Centeno, Obermayer, Rebmann, Maxwell & Hippel, Samuel L. Spear, Spear, Wilderman, Borish, Endy, Spear & Runckel, Philadelphia, PA, for Appellees.

Before SLOVITER, AMBRO and BECKER, Circuit Judges.

OPINION

BECKER, Circuit Judge.

Patricia S. Conroy appeals from the District Court's grant of judgment as a matter of law in favor of the defendant Township of Lower Merion on her claim brought pursuant to the Family Medical Leave Act ("FMLA"). She also appeals from the District Court's grant of summary judgment in favor of the Township on her claim under the Americans with Disability Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"), and in favor of the defendant Transport Workers Union ("TWU") on her claim for breach of the duty of fair representation. We affirm.

The facts and procedural history are involved but they are well known to the parties; we lay them out briefly below.

## I.

Conroy was employed for many years as an accounting clerk in the Township's finance department. She injured her back in a non-work-related incident and, as a result, developed a sensitivity to air currents. Conroy presented the Township with a letter from her doctor stating that her back pain "is aggravated by certain weather conditions." [A504] Conroy's doctor also stated that she experiences "severe, intermittent pain" that is exacerbated by "several environmental and physical changes" including "exposure to air currents blowing from open windows," and recommended that Conroy work in an area where "she will not be exposed to drafts from open windows." [A508] The Township was unable to determine from the letter what precise steps it should take to deal with the problem, and hence it sent Conroy, at its own expense, for an independent medical examination ("IME") to determine how far away from vents, windows, *etc.* she could work (the Township had a longstanding practice of requesting that employees undergo IMEs to clarify confusing medical information).

The doctor conducting the IME determined that Conroy should avoid "actual, perceptible draft[s] that could be objectively documented by an industrial hygienist or HVAC specialist," and stated that "[i]f the window 35 feet away from ... Conroy's cubicle does not give rise to any air currents at her desk or cause an adverse change in temperature, then I am not supporting medically that the window be closed simply because she says to close it." [A518–519] The Township followed up on the doctor's suggestions and employed a company to perform a ventilation survey of the finance department, including Conroy's work station. The results of the survey showed that there were no perceptible air currents directly impacting Conroy's work station; any air currents dissipated before they reached Conroy's cubicle. The Township informed Conroy that, despite the results of the survey, the finance department would endeavor to keep the windows closed. The Township also installed, at its own cost, an air vent above the entrance door to the finance department and weather stripping on all doors within the department.

However, Conroy's condition worsened and she took a leave of absence under the FMLA. Conroy's doctor indicated that Conroy's back pain became worse when the air conditioning was activated and when her supervisor opened both his window and the door to his office. In the doctor's opinion, "stressful working conditions and drafts in the work area are the cause of the exacerbation of pains in her back." [A538] After two months of leave, Conroy's doctor stated that Conroy could return to work but gave another vague statement that she should not be exposed to air currents. Once again, the Township requested that Conroy have an IME to determine precisely how it could accommodate her, but this time Conroy refused and instead requested that she be moved to another workplace. Considering that Conroy had missed two months of work, the Township did not want to employ her without knowing exactly what working conditions would accommodate her condition. After her vacation and sick leave ran out, Conroy was terminated (under the terms of the Collective Bargaining Agreement ("CBA") with the union, any employee who has missed work for 180 days will be terminated).

## II.

■ Pursuant to 29 U.S.C. § 2614, employees taking FMLA leave are entitled to the following:

(a) Restoration to position

(1) In general

Except as provided in subsection (b) of this section, any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave—

(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or

(B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

Although the Township was offering to restore Conroy to her position, Conroy claims that the Township violated 29 U.S.C. § 2615(a)(1), which prohibits employers from taking any action to "interfere with, restrain or deny the exercise of" rights under the FMLA, by requiring her to submit to an IME before returning to work. However, we note that *Rinehimer v. Cemcolift, Inc.* holds that "the FMLA does not require 'an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave.'" 292 F.3d 375, 384 (3d Cir.2002) (internal citations omitted); *see also* 29 C.F.R. § 825.214(b) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."). Thus, the critical question is whether Conroy required an accommodation to perform the essential functions of her job (or an equivalent job). If so, then the Township had no duty to restore her to her position after she took FMLA leave, and the request that she undergo an IME certainly did not interfere with her FMLA rights because she had no right to be restored at all.

We think that Conroy required accommodations. Conroy's doctor indicated that she had taken a leave of absence because her back problems had been exacerbated by stressful working conditions and that she should not return to work until conditions improved (although the doctor also made a somewhat confusing statement that she could "return to unrestricted duty" [A544]); this was after the Township had already made a good faith effort to accommodate Conroy. By requesting a second IME, the Township simply wanted to ensure that Conroy would not come back to work and be put in a situation in which her back problems would flare up again, causing her to miss more work. Without adequately addressing the air current problem (which required Conroy to submit to an IME), Conroy could not continue to perform the essential functions of her job because her back pain would likely worsen once again, causing her to miss work (she certainly could not perform the essential functions of her job if she was not able to work). It is difficult to understand why Conroy would not agree to an IME (the Township would have covered the cost), and it is most unfortunate that this fine, long-term employee of the Township so harmed herself by refusing to agree, but the refusal is fatal to her position. The Township could have outright refused to restore Conroy because she required an accommodation, and thus her claim that the Township violated her rights under the FMLA by requiring her to submit to an IME fails; the IME would have allowed the Township to restore Conroy to her position with an accommodation, something it was not required to do under the FMLA.

■ Neither can Conroy succeed on her FMLA retaliation claim. She simply has

not adduced evidence from which an inference can be drawn that she was fired because she exercised her FMLA rights and not because she refused to submit to an IME. Nor has she adduced evidence from which an inference can be drawn that the Township's request that she undergo an IME was a pretext for terminating her because she exercised her FMLA rights.

 Conroy also fails on her claim that the District Court erred by excluding evidence of allegedly insufficient FMLA notice because she never pled (even though she amended her complaint twice) that the Township failed to provide sufficient notice under the FMLA. Thus, the District Court did not abuse its discretion by deciding that it would be prejudicial to the defendants to allow this claim to go forth when Conroy brought up the issue at such a late point. Nor did the District Court err by denying Conroy's motion to exclude evidence of the Township's prior practice with the union concerning IMEs—this evidence is clearly relevant to the determination of whether the Township could require Conroy to undergo an IME, as past practice can be considered an implied term of the CBA and CBAs can supersede the FMLA. *See Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 311–12, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989); 29 U.S.C. § 2614(a)(4).

 The District Court also did not err by granting the Township's motion for summary judgment on the ADA and PHRA claims (which are properly evaluated as one statute) because Conroy cannot prove the elements of these claims. The ADA and PHRA require that Conroy be disabled in a way that affects major life activities, which she has not shown. *See* 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(g)(1). Additionally, Conroy must show that she suffered an adverse employment action as a result of discrimination

and that the Township's nondiscriminatory reason for her termination (that she refused to submit to an IME) was a pretext for discrimination. Rather, it appears that Conroy was terminated because she would not submit to an IME, not because of her condition. Moreover, although "[a]n employer discriminates against a qualified individual with a disability when it does 'not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer],'" *Gaul v. Lucent Tech., Inc.*, 134 F.3d 576, 579 (3d Cir.1998) (citing 42 U.S.C. § 12112(b)(5)(A)), it was Conroy's failure to allow the Township to figure out how reasonably to accommodate her condition that led to her firing, not the Township's unwillingness to accommodate her.

 Finally, the District Court did not err by granting summary judgment to the TWU on Conroy's breach of the duty of fair representation claim. To succeed on a claim like this, Conroy was required to show that the union acted in bad faith by refusing to submit her claim to arbitration. *See Dykes v. SEPTA*, 68 F.3d 1564, 1571 (3d Cir.1995), *cert. denied* 517 U.S. 1142, 116 S.Ct. 1434, 134 L.Ed.2d 556 (1996). We conclude that Conroy has shown no evidence of bad faith, and that her underlying arguments that the Township discriminated and retaliated against her and failed to accommodate her appear to be without merit. Thus, the union acted reasonably.

The judgment of the District Court will be affirmed.