

Villanova University School of Law

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2004

# Keck v. PPL Elec Util Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3376

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Keck v. PPL Elec Util Corp" (2004). *2004 Decisions*. Paper 723.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/723

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

NO. 03-3376

———

RICHARD KECK,
<u>Appellant</u>

v.

PPL ELECTRIC UTILITIES CORP.

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 02-cv-04071)
District Judge:  Hon. Berle M. Schiller

———

Submitted Under Third Circuit LAR 34.1(a)
May 3, 2004

Before:  SLOVITER, FUENTES, and BECKER, <u>Circuit</u> <u>Judges</u>

(Filed May 5, 2004)

———

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant, Richard Keck, appeals from the order granting summary judgment on behalf of the defendant/appellee, PPL Electric Utilities Corporation ("PPL"), dismissing Keck's claim against PPL purportedly under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. The District Court held that Keck's claim, "though styled as an ADA claim, amounts to a dispute about the interpretation of the CBA [Collective Bargaining Agreement]" and that although not preempted by the Labor Managements Relations Act ("LMRA") to the extent it seeks to remedy violations of the ADA, failed because Keck had not pursued the grievance and arbitration mechanism, as required by the CBA. Keck v. PPL Elec. Utils. Corp., No. 02-4071, slip op. at 8-9 (E.D. Pa. July 22, 2003) ("District Court Opinion").

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12101. We have jurisdiction under 28 U.S.C. § 1291. We will affirm the decision of the District Court.

We exercise plenary review in appeals of summary judgment orders. Doe v. County of Centre, 242 F.3d 437, 446 (3d Cir. 2001). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A court must take the facts in the light most favorable to the nonmoving party and draw

2

all reasonable inferences in that party's favor. <u>McCarthy v. Recordex Serv., Inc.</u>, 80 F.3d 842, 847 (3d Cir. 1996). The opposing party must point to specific, affirmative evidence in the record and not simply rely on mere allegations, conclusory or vague statements, or general denials in the pleadings. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).

## I.

Insofar as this decision is written solely for the parties, we will discuss only those facts necessary in resolving the underlying issues in dispute. The parties here stipulated to the relevant facts for purposes of summary judgment and they are part of the record on appeal. Keck began working for PPL on February 7, 1966 and some 25 years later became a Designer-Drafter in PPL's Transmission & Design Department. He was and is a member of the bargaining unit represented by Local 1600 of the International Brotherhood of Electrical Workers (the "Union").

Several provisions of the CBA entered into between the Union and PPL are relevant to this appeal. CBA Article III, entitled "Grievance Procedure," sets forth the process by which employees may initiate the grievance and arbitration mechanism of the CBA. App. at 21. The CBA defines "grievance" as "any dispute or disagreement arising over the meaning and application of the terms and provisions of [the CBA]," and requires arbitration if the parties cannot reach settlement by the "Third Step discussion." App. at 21.

CBA Article X, which governs the treatment of displaced employees aged 55 or

3

older who elect to retire upon being displaced, states in relevant part,

> The company will identify the job classification and location of the excess position(s). The Labor Relations Department will give 10 working days notice to the Local 1600 Union Office of any decision to displace employees as a result of a reduction, elimination or reassignment of work . . . .

> [Section 1. Box 1. A.(1)] . . . . Employees who are displaced, bumped or qualify as volunteers for displacement will be eligible for special early retirement benefits if they have attained age 55 or over at any time prior to placement.

App. at 37-38.

CBA Exhibit L, entitled "Long-Term Disability Conditions of Return," governs the return of employees who have been on long-term disability ("LTD") leave. App. at 21. In relevant part, Exhibit L states:

> A. When it is necessary to fill vacancies created by employees who become eligible for LTD benefits, they shall be filled on a permanent rather than a temporary basis.

> B. All requests to return to the work force from an LTD status, or subsequent to the cessation of the benefit, shall be predicated upon medical and/or psychological certification authorizing the employee's return to work. . . .

> D. Following are the conditions of return applicable to the designated leave periods: . . . .

> 2. Employees either notifying the Company or returning to the Company after six (6) months, but less than two (2) years from the effective date of their LTD status shall return to their former job classification and former work location provided they are capable of performing the duties of the job and such a vacancy exists. . . .

4

App. at 22 (emphasis added).

On February 1, 1999, Keck reported "off from work," and submitted a physician's note stating that he was "fully disabled" due to "major depression." App. at 22. He neither requested that his leave be considered a reasonable accommodation for a disability under the ADA, nor did he give PPL an anticipated return date. Effective September 25, 1999, Keck's leave qualified for LTD treatment under Exhibit L, which entitled him to a maximum of 24 months of paid leave. PPL sent the Union a letter stating that it did "not plan to back fill" Keck's position.

On January 7, 2000, PPL notified the Union of its plan to displace two Designer-Drafters pursuant to the process set forth in CBA Article X. Both displaced employees elected to retire with enhanced benefits as provided. At the time these two positions were displaced, Keck had not yet turned 55, as his 55th birthday was on June 26, 2000.

On July 26, 2001, PMA Insurance Group sent Keck a letter notifying him that his 24 months of paid leave would end on September 24, 2001. On August 22, 2001, Keck wrote to Robert Sproesser, his supervisor, informing him that he would return to work on September 24, 2001. That letter stated, "In accordance with Exhibit 'L', Section I, Paragraph D, sub-paragraph 2 of the [CBA], please be informed of my medical release to return to work. . . ." App. at 24. Keck also requested in this letter that his name be included in PPL's Voluntary Retirement List.

The Labor Relations Group of PPL determined that CBA Exhibit L, and not CBA

Article X, applied to Keck's return from LTD leave. There were no vacant Designer-Drafter positions and PPL began searching for other positions for which Keck was qualified and medically released to perform. PPL notified Keck of several such positions; Keck declined to take any of them. Instead, he insisted that he be permitted to bump a more junior Designer-Drafter because he believed he had that right under CBA Article X. CBA Exhibit L does not afford employees returning from LTD leave bumping rights.

On October 7, 2001, Keck, having remained unassigned to a position, submitted a letter advising PPL that he would retire on November 1, 2001. He received the standard retirement benefit available to PPL employees, but not the enhanced benefits under CBA Article X available to employees over the age of 55 who elect to retire after having been displaced.

The District Court's decision that Keck's ADA claim is properly construed as a claim involving the interpretation and applicability of the CBA is central to our disposition because under the CBA, Keck was required to exhaust the grievance and arbitration mechanism. His failure to do so warranted the grant of summary judgment in favor of PPL.

## II.

The Supreme Court has held that "federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress."

Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965). Keck argues that "the doctrine of exhaustion of CBA grievance mechanism does not apply when the question involves the intention and motives of the employer," Appellant's Br. at 22, and cites in support the Supreme Court's decision in Lingle v. Norge Div. of Magic Chef, 486 U.S. 399 (1988). In Lingle, the Supreme Court noted that the existence of a grievance process did not preempt a state retaliatory discharge claim because the state-law remedy in that case was "'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement." Lingle, 486 U.S. at 407 (footnote omitted). However, Keck has conceded that "some CBA interpretation is intertwined with [his] ADA claim." Appellant's Br. at 17.

In issues involving CBA interpretation, courts are not permitted to "weigh[] the merits of [a] grievance," because "[w]hether the moving party is right or wrong is a question of contract interpretation for the arbitrator." United Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 568 (1960). Keck admitted that resolution of the ADA claim would involve an interpretation of the CBA and his case is thus distinguishable from Lingle.

Keck argues that he "is entitled to pursue an ADA claim in federal court despite the existence of a collective bargaining agreement." Appellant's Br. at 2. The District Court agreed, District Court Opinion at 8, but Keck makes no ADA claim here – rather his argument is based solely on the interpretation and application of the CBA.

7

In his letter informing PPL that he would be returning, he specifically stated he was returning pursuant to CBA Exhibit L, which governs LTD leave. He stipulated to the fact that his position was not displaced pursuant to CBA, Article X procedures, App. at 23, but then insisted that he should have received the enhanced retirement benefits and bumping rights under Article X. The Labor Relations Group of PPL determined that Exhibit L governed his re-assignment of work, and so essentially, Keck's argument is that PPL erred in not finding that Article X was the governing provision. This is a classic CBA interpretation dispute that should have been arbitrated as per CBA Article III.

Indeed, Keck admitted that the Union Steward, Keith Lambert, advised him to file a grievance over the denial of the enhanced benefits. Keck chose not to "[b]ecause at the time union grievances were taking five years or more to even get into the third step settlement stage. . . . And I wasn't willing to wait five years or more." App. at 27. This is not a valid excuse for bypassing the mandatory grievance and arbitration mechanism, and attempting to repackage the dispute as an ADA claim.

**III.**

In granting summary judgment, the District Court also held that Keck failed to make a prima facie showing of discrimination under the ADA because of his inability to demonstrate one of the three required elements of a prima facie case, i.e., that he "suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998). He asserts repeatedly that PPL

8

applied the CBA to him in a disparate fashion because two displaced persons under Article X were afforded enhanced benefits rights that he was not. However, those employees had not recently returned from work after LTD leave. Instead, those employees were displaced, making Article X applicable. PPL interpreted Exhibit L, not Article X, applicable to Keck because of his LTD leave. As noted above, this would have been an arbitrable issue had Keck pursued that avenue. In any event, it presents a "legitimate, nondiscriminatory reason" for PPL's actions that would be sufficient to shift the burden back upon Keck had he been able to make out a prima facie case. See Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997) (internal quotation marks and citation omitted).

We thus agree with the District Court's finding that "the record is devoid of any indication that PPL's actions were based on discriminatory animus or ill will due to disability." District Court Opinion at 11.

We will therefore affirm its order granting summary judgment.