**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3528
_____

IRENE KENDRELL, Personal Representative
of the Estate of Anthony Kendrell,
                                        Appellant

v.

SECRETARY UNITED STATES DEPARTMENT OF DEFENSE

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-17-cv-00229)
District Judge:  Honorable Robert F. Kelly
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 13, 2019

Before:  MCKEE, COWEN, and RENDELL, Circuit Judges

(Opinion filed: April 15, 2021)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Irene Kendrell, who is acting as the personal representative for the estate of her late son Anthony Kendrell ("Anthony"), appeals the grant of summary judgment in favor of the Secretary of the United States Department of Defense ("Government"). Proceeding pro se,[1] Kendrell contends that the Government violated the Rehabilitation Act, 29 U.S.C. § 701 et seq., by discriminating against Anthony based on his mental disability. For the following reasons, we will affirm.

**I.**

Anthony worked as a Contract Specialist for the Defense Logistics Agency (DLA) beginning in 2008. Prior to working for the DLA, Anthony was diagnosed with Asperger's Syndrome/High Functioning Autism, which affected, among other things, his short-term memory, his ability to follow complex instructions without repetition, and his ability to interact socially with strangers. When he began working for the DLA, Anthony was assigned a new first line supervisor, Donna Raday, and a second line supervisor, Ruth Herman. Both Raday and Herman were aware of Anthony's mental disability; however, according to Kendrell, Raday would dump multiple assignments on Anthony's desk without providing manageable instructions. Raday also frequently worked from

---

[1] Kendrell was initially represented by counsel, who drafted Kendrell's complaint. At one point, counsel for Kendrell and the Government reached a settlement agreement; however, Kendrell filed an emergency motion, contesting her authorization of the settlement. Counsel for Kendrell withdrew shortly after this hearing and the case was reopened. The District Court determined that because Kendrell was the sole beneficiary to her son's estate, and was thus not representing anyone else's interest, she could proceed pro se. See Murray ex rel. Purnell v. City of Philadelphia, 901 F.3d 169, 171 n.3 (3d Cir. 2018).

2

home and was largely unavailable to answer Anthony's questions in person. Raday was aware of Anthony's need to ask in-person questions and have instructions reiterated multiple times; however, she required Anthony to send her questions via email that she would allegedly respond to days later.

In April 2013, Raday informed Anthony that he was assigned to work on the Decentralized Blanket Purchase Agreement Program (DBPA). Anthony was initially trained by Linda Ciglinsky for this new role. Raday eventually took over Anthony's training because Ciglinksy was an employee from another division. However, on occasion, others (including Ciglinksy) assisted Anthony. In May 2013, Anthony verbally requested "that he be assigned to another trainer who could regularly train him on the procedures for completing DBPAs. He asked to have Ms. Linda Ciglinsky to be his fulltime trainer. He also asked for reiteration when necessary; time to write down good notes and basic patience from whoever was training him." Suppl. App. 68. Raday informed Anthony that she could not grant his request in its entirety because Ciglinsky worked in a different division for a different supervisor. As an alternative, she offered to continue to train him herself on an as-needed basis. In early June 2013, Anthony asked Robbin Durie (Raday's supervisor) to assign him a different supervisor. Durie did not approve the request. On June 24, 2013, Anthony filed a complaint with the DLA's Equal Employment Opportunity Office ("EEO"). Anthony's complaint sought only one remedy: reassignment to a different supervisor. See Dkt. #40-2; Suppl. App. 69.

On February 19, 2014, the DLA placed Anthony on paid administrative leave indefinitely, following an emotional episode witnessed by Herman on February 12, 2014.

3

According to a letter from Herman, Anthony was angry, "irate and loud" about Raday, and, during the encounter, he told Herman that he was considering killing himself. Based on this episode, including the threat to kill himself and his demeanor, Herman had concerns about the safety of the workplace. Consequently, Herman placed Anthony on paid administrative leave until he could provide medical documentation showing that he was not a danger to himself and others. Anthony remained on paid administrative leave for well over a year, when on May 19, 2015, the DLA removed him from federal service because he was ultimately unable to provide sufficient medical documentation that showed he was able to return to work. On May 23, 2015, Anthony tragically took his own life.

Kendrell filed this suit on September 21, 2016,[2] alleging that the Government: (1) failed to provide reasonable accommodations for Anthony's disability; (2) subjected Anthony to a hostile work environment because of his disability; and (3) unlawfully retaliated against Anthony.[3] The Government moved for summary judgment, which the District Court granted. Kendrell timely appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District

---

[2] On August 19, 2015, the EEO office issued a Final Agency Decision denying Anthony's June 2013 EEO complaint, allowing the suit to be brought to federal court. The decision found that Anthony had not set forth a prima facie case of harassment or failure to provide reasonable accommodations. Suppl. App. 67–73.

[3] Kendrell originally filed this action in the New Jersey District Court, alleging violations of the Americans with Disabilities Act ("ADA") and New Jersey state law. By stipulation, the New Jersey state law claims were dismissed, and the Rehabilitation Act was substituted for the ADA. Dkt. # 11. The case was also transferred to the District Court for the Eastern District of Pennsylvania.

Court's ruling on a motion for summary judgment de novo. Antol v. Perry, 82 F.3d 1291, 1294 (3d Cir. 1996). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Kaucher v. County of Bucks, 455 F.3d 418, 422–23 (3d Cir. 2006). Summary judgment must be granted against a party who fails to establish the existence of an essential element to that party's case, if that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

## II.

"The Rehabilitation Act expressly makes the standards set forth in the [ADA] applicable to federal employers and to employers receiving federal funding." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Accordingly, the methods and manner of proof under the ADA apply equally to discrimination claims under the Rehabilitation act. See id. at 185.

The District Court considered Kendrell's three claims: (1) failure to provide reasonable accommodations; (2) hostile work environment; and (3) retaliation. On appeal, Kendrell does not challenge the District Court's determination with respect to the retaliation claim. See F.D.I.C. v. Deglau, 207 F.3d 153, 169 (3d Cir. 2000) (finding an issue not raised in opening brief on appeal was waived and would not be addressed).

Kendrell also raises several arguments for the first time on appeal, including claims that the attorney she initially retained poorly represented her and that the District

5

Court never addressed her son's suicide. Kendrell asks us on appeal to hold the DLA accountable for the actions that led to her son's death. Appellant's Br. 6. We empathize with Kendrell's loss of her son and agree that the circumstances of his suicide are tragic. As an appellate court, however, we are constrained to review only those issues that are properly before us. Because these issues were not raised before the District Court, they are unpreserved for appellate review, and we will not consider them. See Garza v. Citigroup Inc., 881 F.3d 277, 284 (3d Cir. 2018). Rather, we address Kendrell's reasonable accommodations and hostile work environment claims, as those are the only claims properly before us. See id.

## A. Reasonable Accommodations

Kendrell alleged that Anthony was denied reasonable accommodations that would have allowed him to perform the essential functions of his job. "To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must initially show, (1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job." Wishkin, 476 F.3d at 184–85 (internal quotation marks omitted). With regard to the second element, where—as here—the employee maintains that he would be otherwise qualified with reasonable accommodations, the employee "must demonstrate what reasonable accommodations [he] contends the employer should have made," which begins with "at least a facial showing that such accommodation is possible." See Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996).

6

Here, the only reasonable accommodation that Anthony continually sought was reassignment to a different supervisor.[4] Anthony's requests were based in part on the stress he experienced due to Raday's frequent working from home and her being largely unavailable to answer Anthony's questions in person (although she was available via email).

As the District Court correctly noted, this Court's decision in Gaul v. Lucent Technologies Inc., 134 F.3d 576 (3d Cir. 1998), addressed a similar issue, and we agree that it is dispositive. In Gaul, as here, the proposed accommodation was a transfer away from individuals who caused the plaintiff prolonged and inordinate stress. Id. at 580. We held that such a proposed accommodation was unreasonable as a matter of law, and thus the plaintiff in Gaul was unable to meet his burden under Shiring. See id. at 581. We have since reaffirmed this notion.[5] See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319 n.10 (3d Cir. 1999) (noting "that a disabled employee is not entitled to a supervisor

---

[4] We note that the summary judgment record reflects that Anthony did not request to be reassigned to a different *position*, only a different supervisor.

[5] This holding is also in line with several of our sister circuits. See, e.g., Weiler v. Household Fin. Corp., 101 F.3d 519, 526 (7th Cir. 1996) (holding the ADA does not require an employer to transfer an employee to work under another supervisor, and noting such a request essentially asks the court to allow the employee, rather than the employer, to establish the conditions of her employment—most notably, who will supervise her); Wernick v. Fed. Reserve Bank of N.Y., 91 F.3d 379, 384 (2d Cir. 1996) (holding the failure to assign an employee to a different supervisor did not violate reasonable accommodation requirement of ADA and Rehabilitation Act; "Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons").

ideally suited to his or her needs" and reiterating our holding in Gaul "that an employee is not entitled to transfer whenever the employee deems that his co-workers are causing him inordinate stress"). Consequently, the District Court properly granted summary judgment as to this issue, as Kendrell did not establish an essential element for her prima facie case of discrimination.[6] See Wishkin, 476 F.3d at 184–85; Celotex Corp., 477 U.S. at 322–23.

**B. Hostile Work Environment**

Kendrell alleged that Anthony was subjected to "both an objective and subjective hostile and offensive environment." Compl. ¶ 31. In order to establish a hostile work environment claim, Kendrell must show that (1) Anthony suffered intentional discrimination because of his disability, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected him, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of respondeat superior liability. See Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017). "Whether an environment is hostile requires looking at the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 264

---

[6] It is unclear whether Kendrell is challenging on appeal the District Court's holding regarding the DLA's alleged failure to participate in the "interactive process" of finding a reasonable accommodation. See Taylor, 184 F.3d at 311. To the extent that she is, we agree with the District Court's ruling on the matter, and further note that where an "employee insists on a single accommodation that is unreasonable as a matter of law"—such as the transfer at issue here—"then the employee will be at fault for the breakdown in the interactive process." Id. at 316 n.7.

(internal quotation marks omitted).

For the reasons set forth in the District Court's memorandum order, we agree that the actions complained of do not rise to the level of a hostile work environment.[7] With regard to Raday, Kendrell has not met her burden in establishing that Raday's behavior singled-out Anthony *because of* his disability. See id. at 263. The District Court noted that, for example, other co-workers agreed with Anthony that Raday gave fast and vague instructions. See Dkt. #46 at 11–12. Our independent review of the summary judgment record supports the District Court's characterization of the workplace environment. In a document submitted to the District Court at the summary judgment hearing, Anthony notes:

> I have been informed by a few sources, that other people, who work under Mrs. Raday, have also requested to be moved. . . . [I]t is common knowledge in my organization, that Donna Raday is often sarcastic, and cynical. I have often heard her referred to, as various expletives, by those who work for her.

Dkt. #45 at PDF p.11.[8] Within that same document, Kendrell notes that Raday talked to Anthony in a demeaning manner and argues "[j]ust because she talked to

---

[7] The District Court identified the following actions as the basis for Kendrell's claim of hostile work environment: That (1) Raday would regularly provide instructions on new tasks in an abrupt, off the cuff way; (2) Raday continuously subjected Anthony to unnecessary criticism, sarcasm, and cynicism allegedly because of Anthony's mental disability; (3) Raday allegedly told Anthony, "I don't have time to be running around," in response to Anthony's request to be introduced to co-workers and have Raday explain to those co-workers that he would be occasionally seeking their assistance; and (4) Herman allegedly told Anthony that "she was tired of hearing Asperger's Syndrome as an excuse" for his performance. Dkt. #46 at 10.

[8] There are not consistent page numbers within this filing, thus our page number refers to the PDF page number.

others that way doesn't make it right." Dkt. #45 at PDF p.4.  We agree, of course, that rudeness in the workplace is inappropriate and unhelpful.  However, based on the summary judgment record before us, it appears that Raday acted this way toward everyone, and that Anthony was not treated differently *because of his disability*.  See Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 667 (3d Cir. 1999) ("The fact that [a supervisor's] behavior toward [an employee] may have been offensive does not indicate that it was based on [that employee's] disability.").

Additionally, Herman's alleged remark that she was tired of hearing Anthony's disability as an excuse appears to have been made only once, with the timing of the statement being unclear.  See Castleberry, 863 F.3d at 265–66 (noting that an isolated incident, if extreme enough, can create a hostile work environment).  While this remark is undoubtedly offensive, this single remark was not so severe that it objectively changed the conditions of Anthony's employment.  See id.; Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 280 (3d Cir. 2001) ("The Supreme Court has stated that Title VII is not violated by the mere utterance of an [] epithet which engenders offensive feelings in an employee or by mere discourtesy or rudeness, unless so severe or pervasive as to constitute an objective change in the conditions of employment." (internal quotation marks omitted)).  Accordingly, we will affirm the District Court's judgment as to this issue, as Kendrell has not met her burden in establishing her prima facie case for a hostile work environment.  See Castleberry, 863 F.3d at 263; Celotex Corp., 477 U.S. at 322–23.

10

## III.

Based on the foregoing, we will affirm the District Court's judgment.